James A. McDevitt
United States Attorney
Eastern District of Washington
George J.C. Jacobs, III
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

Paul E. Pelletier
Acting Chief
Mark F. Mendelsohn
Deputy Chief
Fraud Section, Criminal Division
1400 New York Avenue, N.W.
Washington, D.C. 20005
Telephone: (202) 514-1721

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MAR 20 2006

JAMES R. LARSEN, CLERK
_____DEPUTY
SPOKANE, WASHINGTON

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

           Plaintiff,

    vs.

RICHARD JOHN NOVAK,

           Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

CR-05-180-3-LRS

SUPERSEDING INFORMATION

Vio: 18 U.S.C. §§ 371, 1341, 1343, and 15 U.S.C. § 78dd-2(a)
Conspiracy To Commit Mail/Wire Fraud and Violate the Foreign Corrupt Practices Act
(Count 1)

Vio: 15 U.S.C. § 78dd-2(a)
Foreign Corrupt Practices Act (Count 2)

The United States Attorney Charges:

## GENERAL ALLEGATIONS

At all material times to this Information,

1.  The Foreign Corrupt Practices Act of 1977 (FCPA), as amended, 15 U.S.C. § 78dd-1, *et seq.*, was enacted by Congress for the purpose of, among other things, making it unlawful for United States persons, businesses and residents to

SUPERSEDING INFORMATION - 1
P60320GJ.GJA.wpd

1  use the United States mails, or any means or instrumentality of interstate or
2  foreign commerce, in furtherance of an offer, promise, authorization, or payment
3  of money or anything of value to a foreign government official for the purpose of
4  obtaining or retaining business for, or directing business to, any person.
5       2.   Defendant RICHARD JOHN NOVAK is an American citizen. The
6  Defendant, RICHARD JOHN NOVAK, was employed by Dixie Ellen Randock
7  and Steven Karl Randock, Sr., who are individuals not named as defendants
8  herein, and who owned and operated several internet businesses from their
9  principal places of business in the States of Washington and Idaho and from mail
10 forwarding boxes located in Washington, D.C., and Wilmington, Delaware. These
11 internet businesses used the names "Saint Regis University," "Robertstown
12 University," and "James Monroe University." They were diploma mills in that
13 these "universities" had no legitimate faculty members; offered no legitimate
14 academic curriculum or services; required no course or class work; and were not
15 recognized by the United States Department of Education. For a fee, these internet
16 businesses manufactured, transmitted, and sold fraudulent academic products,
17 including, but not limited to, fraudulent high school "diplomas" and college
18 "degrees," fraudulent academic transcripts, and fraudulent dean's lists over the
19 internet to thousands of consumers throughout the United States and in foreign
20 countries. The individual not named herein also owned and operated an entity
21 called the "National Board of Education, Inc." On or about June 12, 2002, the
22 "National Board of Education, Inc." was issued a Certificate of Incorporation by
23 the Ministry of Foreign Affairs, the Republic of Liberia. At a date unknown, but
24 beginning at least by on or about August 28, 2002, it was represented that "Saint
25 Regis University" was operated by the "National Board of Education, Inc." Dixie
26 Ellen Randock and Steven Karl Randock, Sr., who are individuals not named as
27 defendants herein also owned and operated the "Official Transcript Verification
28 Center" (OTVC).

SUPERSEDING INFORMATION - 2
P60320GJ.GJA.wpd

3. "Saint Regis University" was incorporated in the Commonwealth of Dominica on or about October 31, 2001. At a date unknown, but beginning at least by on or about March 23, 2003, it was represented that "James Monroe University" had met the criteria set forth by the National Commission of Higher Education, Republic of Liberia, to operate an institution of higher learning in the Republic of Liberia and that "James Monroe University" had been granted valid accreditation for two years. At a date unknown, but beginning at least by on or about October 16, 2003, it was represented that "Robertstown University" was operated by the "National Board of Education, Inc." and that "Robertstown University" had met the criteria set forth by the National Commission of Higher Education, Republic of Liberia, to operate an institution of higher learning in the Republic of Liberia and that Robertstown University had been granted valid accreditation for five years.

4. Defendant RICHARD JOHN NOVAK's employer and his employer's businesses were "domestic concerns" as that term is defined in the FCPA, 15 U.S.C. §78dd-2(h)(1)(B). Defendant RICHARD JOHN NOVAK was a citizen of the United States and therefore a "domestic concern," and an agent of a "domestic concern," as those terms are defined in the FCPA, 15 U.S.C. § 78dd-2(h)(1)(A) & (B). The principal place of business of Saint Regis University, James Monroe University, Robertstown University, and the National Board of Education, Inc. was in the United States.

5. The various foreign government officials who received the bribes held various positions at the Liberian Embassy in Washington, D.C., the Liberian Embassy in Accra, Ghana, and at the Ministry of Education for the Republic of Liberia in Monrovia, Liberia, and were all "foreign officials" within the meaning of the Foreign Corrupt Practices Act, 15 U.S.C. § 78dd-(h)(2)(A). These foreign government officials were in a position to: issue certificates of accreditation and recognition; issue notarial certificates; issue letters claiming that Saint Regis

SUPERSEDING INFORMATION - 3
P60320GJ.GJA.wpd

1  University was fully accredited and recognized by the Ministry of Education in the
2  Republic of Liberia and that the National Board of Education, Inc. was a valid and
3  authentic higher education accreditation organization; and cause staff at the
4  Liberian Embassy in Washington, D.C., to answer the telephone calls in a positive
5  way when inquiries regarding the legitimacy of Saint Regis University, James
6  Monroe University, and Robertstown University were made; all of which were
7  critical to the successful running of the Saint Regis University, Robertstown
8  University and James Monroe University diploma mill operation.

## COUNT 1
### (Conspiracy To Commit Wire/Mail Fraud and to Violate the Foreign Corrupt Practices Act)

12  6.     Paragraphs 1 through 5 of the General Allegations section of this
13  Information are realleged and incorporated herein by reference.

### THE CONSPIRACY AND ITS OBJECTS

15  7.     From a date unknown, but beginning at least by on or about April 1,
16  2002, and continuing thereafter up to and including August 11, 2005, within the
17  Eastern District of Washington and elsewhere, Defendant RICHARD JOHN
18  NOVAK did knowingly combine, conspire, confederate, and agree with Dixie
19  Ellen Randock and Steven Karl Randock, Sr., who are not charged herein, and
20  others known and unknown, to commit an offense against the United States, to
21  wit, violations of: the mail fraud statute, Title 18, United States Code, Section
22  1341; the wire fraud statute, Title 18, United States Code, Section 1343; and the
23  Foreign Corrupt Practices Act, Title 15, United States Code, Section 78dd-2.
24  8.     It was a part and object of the conspiracy that Defendant RICHARD
25  JOHN NOVAK, co-conspirators not named as defendants herein, and others
26  known and unknown, being United States citizens and "domestic concerns" as that
27  term is defined in the FCPA, or being agents of "domestic concerns," would and
28  did make use of the mails and any means and instrumentality of interstate

SUPERSEDING INFORMATION - 4
P60320GJ.GJA.wpd

commerce corruptly in furtherance of an offer, payment, promise to pay, and authorization of the payment of any money, and offer, gift, promise to give, and authorization of the giving of anything of value to foreign officials for purposes of (a) influencing acts and decisions of such foreign officials in their official capacity, (b) inducing such foreign officials to do and omit to do acts in violation of the lawful duty of such officials, (c) inducing such foreign officials to use their influence with a foreign government and instrumentalities thereof to affect and influence acts and decisions of such government and instrumentalities, and (d) securing any improper advantage, in order to assist Defendant RICHARD JOHN NOVAK, co-conspirators not named as defendants herein, and others known and unknown, in obtaining and retaining business for and with, and directing business to, any person, in violation of Title 15, United States Code, Section 78dd-2(a).

9. It was a part and object of the conspiracy that Defendant RICHARD JOHN NOVAK, co-conspirators not named as defendants herein, and others known and unknown, in the Eastern District of Washington and elsewhere, did knowingly and willfully devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of material false and fraudulent pretenses, representations and promises; and for the purpose of executing the scheme and artifice to defraud Defendant RICHARD JOHN NOVAK, co-conspirators not named as defendant herein, and others known and unknown, used, or caused others to use, the United States Postal Service, commercial interstate carriers, and wire communications in interstate and foreign commerce. The object of the scheme and artifice to defraud was to obtain money from consumers worldwide by selling those consumers fraudulent academic diplomas, degrees, and records that the consumers did not earn through actual course work and that were issued by business entities that lacked any accreditation. That scheme and artifice to defraud is set forth more fully below:

## MANNER AND MEANS OF THE CONSPIRACY

10. It was part of the scheme and artifice to defraud that Defendant RICHARD JOHN NOVAK obtained apostilles and authentications for consumers in order to create the appearance that the false and fraudulent academic products manufactured, printed, and sold in the name of Saint Regis University, James Monroe University and Robertstown University were legitimate academic products.

11. It was part of the scheme and artifice to defraud that Defendant RICHARD JOHN NOVAK, co-conspirators not named as defendants herein, and others known and unknown, used, or caused others to use, the United States Postal Service, commercial interstate carriers, and wire communications in interstate and foreign commerce.

12. It was part of the scheme and artifice to defraud that Defendant RICHARD JOHN NOVAK, co-conspirators not named as defendants herein, and others known and unknown, led consumers, potential consumers, and others throughout the world to believe that Saint Regis University, James Monroe University, and Robertstown University were legitimate academic institutions of higher learning which had been officially accredited by the Ministry of Education in the Republic of Liberia, when in truth and fact, they were not.

13. It was part of the scheme and artifice to defraud that Defendant RICHARD JOHN NOVAK, at the direction of a co-conspirator not named as a defendant herein, made numerous trips to Washington, D.C., to obtain "authentication" documents, "transcript attestations," and "apostilles" from the United States Department of State and foreign embassies for the false academic products which had been sold to consumers in the names of Saint Regis University, James Monroe University, and Robertstown University. It was part of the scheme and artifice to defraud that consumers were charged for this service.

14. It was part of the scheme and artifice to defraud that co-conspirators

not named as defendants herein falsely represented Defendant RICHARD JOHN NOVAK to the public as being: "Professor Dr. Richard Novak, PhD (International Business) and Doctor of Education (Educational Administration and Psychology);" the "Registrar and Past Chief Provost" who designed and developed the psychology curriculum for all Saint Regis University branch campuses and sponsor universities; the past president of the Educational Administration Department at "Blackstone University" and past professor for the MBA program at "Nation State;" and the "Commissioner of Education and Culture, National Board of Education, Inc." The Defendant never earned an advanced degree at a legitimate educational institution and never worked in the education field.

15. It was part of the scheme and artifice to defraud that during the period April 1, 2002, through on or about August 11, 2005, co-conspirators not named as defendants herein, and others known and unknown, sold approximately $2.3 million in false and fraudulent academic products to thousands of consumers over the internet.

16. It was part of the scheme and artifice to defraud that Defendant RICHARD JOHN NOVAK, co-conspirators not named as defendants herein, and others known and unknown, did use and cause to be used bank wire transfers and Western Union wire transfers to pay bribes to foreign government officials, namely Republic of Liberia officials stationed at the Liberian Embassy in Washington, D.C.; the Liberian Embassy in Accra, Ghana; and the Ministry of Education in Monrovia, Liberia.

17. It was part of the scheme and artifice to defraud that Defendant RICHARD JOHN NOVAK, co-conspirators not named as defendants herein, and others known and unknown, paid money and other things of value to foreign government officials in exchange for: receiving certificates of recognition and accreditation in the name of Saint Regis University, Robertstown University, and James Monroe University; inducing Republic of Liberia officials to issue letters on

SUPERSEDING INFORMATION - 7
P60320GJ.GJA.wpd

official letterhead representing that Saint Regis University was fully accredited and recognized by the Republic of Liberia; and inducing staff at the Liberian Embassy in Washington, D.C., to answer telephone calls in a positive manner when inquiries were made about the legitimacy of Saint Regis University.

18. It was part of the scheme and artifice to defraud that Defendant RICHARD JOHN NOVAK, co-conspirators not named as defendants herein, and others known and unknown, paid money and other things of value to foreign government officials in exchange for receiving letters and other documents representing that Saint Regis University was not a diploma mill and the Official Transcript Verification Center was not connected to Saint Regis University.

## OVERT ACTS

19. The allegations contained in Count Two are realleged and incorporated herein by reference. In furtherance of the agreement and to accomplish the objects of the conspiracy Defendant RICHARD JOHN NOVAK performed the following overt acts in the Eastern District of Washington and elsewhere.

20. At a date unknown, but at least by in or about 2002, Defendant RICHARD JOHN NOVAK had a conversation with a co-conspirator not named as a defendant herein whereby Defendant RICHARD JOHN NOVAK agreed to travel to Washington, D.C., to obtain "apostilles" and "authentications" for degrees sold to consumers by Saint Regis University.

21. At a date unknown, but at least by in or about June 2002, Defendant RICHARD JOHN NOVAK, at the direction of a co-conspirator not named as a defendant herein, traveled to the Liberian Embassy in Washington, D.C., and spoke with the Consul in order to obtain "accreditation" and "recognition" for Saint Regis University.

22. At a date unknown, but at least by in or about June 2002, Defendant RICHARD JOHN NOVAK, at the direction of a co-conspirator not named as a

SUPERSEDING INFORMATION - 8
P60320GJ.GJA.wpd

defendant herein, met with the Consul at the Liberian Embassy in Washington, D.C., and agreed to pay that official a bribe of approximately $2,250 in order to obtain an "accreditation" and "recognition" for Saint Regis University.

23. At a date unknown, but at least by in or about June 2002, Defendant RICHARD JOHN NOVAK notified a co-conspirator not named as a defendant herein, who was in the State of Washington, that payments would have to be made to Liberian government officials in order to obtain "accreditation" and "recognition" for Saint Regis University.

24. On or about July 16, 2002, Defendant RICHARD JOHN NOVAK sent by facsimile transmission from the State of Arizona to a co-conspirator in the State of Washington, who is not named as a defendant herein, requests for advance payment of expenses for his trip to Washington, D.C., including air fare, hotel, entertaining the Liberian Consul, and purchasing notaries, "apostilles," and "legalizations" from several foreign embassies.

25. On or about August 26, 2002, Defendant RICHARD JOHN NOVAK sent by facsimile transmission from the State of Arizona to a co-conspirator in the State of Washington, who is not named as a defendant herein, requests for advance payment of expenses for his trip to Washington, D.C., including a $1,750 balance due to the Liberian Consul, entertainment for the Liberian Consul, and $450 for forty-five "generic" sets of "apostilles."

26. At a date unknown, but at least by in or about January 2003, Defendant RICHARD JOHN NOVAK told an official of the Liberian Government who was stationed at the Liberian Embassy in Washington, D.C., that a co-conspirator not named as a defendant herein would pay Liberian Embassy employees approximately $400 per month if they would represent to consumers who contacted the Embassy that Saint Regis University was "accredited" and "recognized" by the Republic of Liberia.

27. At various times between 2003 and 2005, Defendant RICHARD

SUPERSEDING INFORMATION - 9
P60320GJ.GJA.wpd

JOHN NOVAK traveled to Monrovia, Liberia, in order to meet with Liberian Government officials and facilitate payment of cash bribes in excess of $44,000 in order to obtain certificates of "accreditation" and "recognition" for Saint Regis University, James Monroe University, and Robertstown University.

28. At various times between 2002 and 2004, Defendant RICHARD JOHN NOVAK and other co-conspirators not named as defendants herein, caused monies to be transferred by wire from the State of Washington to the personal bank account (located in Maryland) of the Consul at the Liberian Embassy in Washington, D.C., to be paid as bribes.

29. At various times between 2003 and 2005, Defendant RICHARD JOHN NOVAK, at the direction of and with assistance from co-conspirators not named as defendants herein, caused monies to be sent by Western Union wire from the State of Washington to Washington, D.C., and Liberia in order to pay bribes to Liberian Government officials.

30. On or about September 11, 2003, Defendant RICHARD JOHN NOVAK, at the e-mail instructions of a co-conspirator not named as a defendant herein, caused a Government official in Liberia to issue a letter which had been written by the co-conspirator, to authorities in the State of Oregon claiming that Saint Regis University was "accredited" and "recognized," was not a diploma mill, and that the Official Transcript Archive Center (OTAC) was not connected to Saint Regis University.

All in violation of Title 18, United States Code, Sections 371, 1341, 1343, and Title 15, United States Code, Section 78dd-2(a).

## COUNT 2
### (Foreign Corrupt Practices Act)

The allegations set forth in paragraphs 1 through 29 of the General Allegations and Count One are realleged and incorporated herein by reference.

At a date unknown, but at least by on or about January 17, 2003, in the

SUPERSEDING INFORMATION - 10
P60320GJ.GJA.wpd

Eastern District of Washington and elsewhere, Defendant RICHARD JOHN NOVAK, a United States citizen, a "domestic concern" and an agent of a "domestic concern" within the meaning of the Foreign Corrupt Practices Act, did make use of the mails and means and instrumentalities of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, and authorization of the payment of any money, and offer, gift, promise to give, and authorization of the giving of anything of value to foreign officials for purposes of (a) influencing acts and decisions of such foreign officials in their official capacity, (b) inducing such foreign officials to do and omit to do acts in violation of the lawful duty of such officials, (c) inducing such foreign officials to use their influence with foreign governments and instrumentalities thereof to affect and influence acts and decisions of such governments and instrumentalities, and (d) securing any improper advantage, in order to assist Defendant RICHARD JOHN NOVAK and his employer in obtaining and retaining business for and with, and directing business to, any person; to wit, Defendant RICHARD JOHN NOVAK did make a cash payment of $4,000 to the Consul and First Secretary at the Liberian Embassy in Washington, D.C., in order to assist Saint Regis University and its owners in fraudulently selling diplomas through their internet businesses.

All in violation of Title 15, United States Code, Section 78dd-2(a) & (g) and Title 18, United States Code, Section 2.

DATED this 20TH day of March, 2006.

James A. McDevitt
United States Attorney

George J.C. Jacobs, III
Assistant United States Attorney

Paul E. Pelletier
Acting Chief, Fraud Section
U.S. Department of Justice

Mark F. Mendelsohn
Deputy Chief, Fraud Section
U.S. Department of Justice