1  James A. McDevitt
   United States Attorney
2  Eastern District of Washington
   George J.C. Jacobs, III
3  Assistant United States Attorney
   Post Office Box 1494
4  Spokane, WA 99210-1494
   Telephone: (509) 353-2767
5
   Paul E. Pelletier
6  Acting Chief
   Mark F. Mendelsohn
7  Deputy Chief
   Fraud Section, Criminal Division
8  1400 New York Avenue, N.W.
   Washington, D.C. 20005
9  Telephone: (202) 514-1721

10

11              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF WASHINGTON
12

13

14  UNITED STATES OF AMERICA,           )
                                        )
15              Plaintiff,              )
                                        )       CR-05-180-3-LRS
16       vs.                            )
                                        )       Plea Agreement
17  RICHARD JOHN NOVAK,                 )
                                        )
18              Defendant.              )

19

20       Plaintiff United States of America, by and through James A. McDevitt,

21  United States Attorney for the Eastern District of Washington, George J.C. Jacobs,

22  III, Assistant United States Attorney for the Eastern District of Washington, Paul

23  E. Pelletier, Acting Chief, Fraud Section, U.S. Department of Justice, Mark F.

24  Mendelsohn, Deputy Chief, Fraud Section, U.S. Department of Justice, and Adam

25  Reeves, Trial Attorney, Fraud Section, U.S. Department of Justice (together, the

26  "United States"), and Defendant RICHARD JOHN NOVAK and the Defendant's

27  counsel, Thomas M. Hoidal, agree to the following Plea Agreement:

28

Plea Agreement - 1
P60310GJ.GJA.wpd

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MAR 20 2006

JAMES R. LARSEN, CLERK
                        DEPUTY
SPOKANE, WASHINGTON

1.    <u>Waiver of Indictment, Guilty Pleas and Maximum Statutory</u>
<u>Penalties</u>:

The Defendant, RICHARD JOHN NOVAK, agrees to waive Indictment by a Grand Jury and to plead guilty to the two-count Superseding Information, which was filed on March 20, 2006, charging the Defendant in Count One with Conspiracy to Commit Wire Fraud and Mail Fraud and to Violate the Foreign Corrupt Practices Act, in violation of 18 U.S.C. §§ 371, 1341, 1343, and 15 U.S.C. § 78dd-2(a), and in Count Two with violation of the Foreign Corrupt Practices Act, in violation of 15 U.S.C. § 78dd-2(a).

The Defendant, RICHARD JOHN NOVAK, understands that the charge contained in Count One of the Superseding Information is a Class D felony. The Defendant, RICHARD JOHN NOVAK, also understands that the maximum statutory penalty for Conspiracy to Commit Wire Fraud and Mail Fraud and to Violate the Foreign Corrupt Practices Act, in violation of 18 U.S.C. §§ 371, 1341, 1343, and 15 U.S.C. § 78dd-2(a), is not more than five (5) years' imprisonment; a fine not to exceed the greatest of $250,000 or twice the gross pecuniary gain derived from the offense or twice the gross pecuniary loss suffered by a person other than the Defendant as a result of the offense, pursuant to 18 U.S.C. § 3571; a term of supervised release of not more than three (3) years; the payment of restitution; and a mandatory $100 special assessment.

The Defendant, RICHARD JOHN NOVAK, further understands that the charge contained in Count Two of the Superseding Information is a Class D felony. The Defendant, RICHARD JOHN NOVAK, also understands that the maximum statutory penalty for violation of the Foreign Corrupt Practices Act, in violation of 15 U.S.C. § 78dd-2(a), is not more than five (5) years' imprisonment; a fine not to exceed the greatest of $100,000 or twice the gross pecuniary gain derived from the offense or twice the gross pecuniary loss suffered by a person other than the Defendant as a result of the offense, pursuant to 18 U.S.C. § 3571; a

Plea Agreement - 2
P60310GJ.GJA.wpd

1   term of supervised release of not more than three (3) years; the payment of

2   restitution; and a mandatory $100 special assessment. The Defendant further

3   understands that the Court has the authority to impose consecutive sentences

4   under the two counts, which the Defendant would have to serve one after the

5   other.

6        The Defendant, RICHARD JOHN NOVAK, understands that a violation of

7   a condition of supervised release carries an additional penalty of re-imprisonment

8   for all or part of the term of supervised release, without credit for time previously

9   served on post-release supervision.

10       2.    The Court is Not a Party to the Agreement:

11       The Court is not a party to this Plea Agreement and may accept or reject this

12   Plea Agreement. Sentencing is a matter that is solely within the discretion of the

13   Court. The Defendant understands that the Court is under no obligation to accept

14   any recommendations made by the United States and/or by the Defendant; that the

15   Court will obtain an independent report and sentencing recommendation from the

16   U.S. Probation Office; and that the Court may, in its discretion, impose any

17   sentence it deems appropriate up to the statutory maximums stated in this Plea

18   Agreement.

19       The Defendant acknowledges that no promises of any type have been made

20   to the Defendant with respect to the sentence the Court will impose in this matter.

21   The Defendant understands that the Court is required to consider the applicable

22   sentencing guideline range, but may depart upward or downward under the

23   appropriate circumstances.

24       The Defendant also understands that should the sentencing judge decide not

25   to accept any of the parties' recommendations, that decision is not a basis for

26   withdrawing from this Plea Agreement or a basis for withdrawing his pleas of

27   guilty.

28

Plea Agreement - 3
P60310GJ.GJA.wpd

3.     Waiver of Constitutional Rights:

The Defendant, RICHARD JOHN NOVAK, understands that by entering his pleas of guilty the Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

        (a).     The right to a jury trial;

        (b).     The right to see, hear and question the witnesses;

        (c).     The right to remain silent at trial;

        (d).     The right to testify at trial; and

        (e).     The right to compel witnesses to testify.

While the Defendant is waiving certain constitutional rights, the Defendant understands the Defendant retains the right to be assisted through the sentencing and any direct appeal of the convictions and sentence by an attorney, who will be appointed at no cost if the Defendant cannot afford to hire an attorney.  The Defendant also acknowledges that any pretrial motions currently pending before the Court are waived.

4.     Elements of the Offense:

Count One: Mail/Wire Fraud/Foreign Corrupt Practices Act Conspiracy:

The United States and the Defendant agree that in order to convict the Defendant of Conspiracy to Commit Wire Fraud and Mail Fraud, in violation of 18 U.S.C. §§ 371, 1341 and 1343, and to Violate the Foreign Corrupt Practices Act, in violation of 15 U.S.C. § 78dd-2(a), the United States would have to prove beyond a reasonable doubt the following elements:

        (a).     First, beginning at least by on or about April 1, 2002, and continuing thereafter up to and including on or about August 11, 2005, in the Eastern District of Washington and elsewhere, there was an agreement between Defendant RICHARD JOHN NOVAK and at least one other individual to commit mail fraud

1       and wire fraud, and to violate the Foreign Corrupt Practices Act;

2       (b).    Second, the Defendant, RICHARD JOHN NOVAK, became a

3               member of the conspiracy knowing of at least one of its objects

4               and intending to accomplish it; and

5       (c).    Third, the Defendant, RICHARD JOHN NOVAK, or another

6               conspirator, performed at least one overt act for the purpose of

7               carrying out the conspiracy.

8   Count Two:  Foreign Corrupt Practices Act:

9       The United States and the Defendant agree that in order to convict the

10  Defendant of a violation of the Foreign Corrupt Practices Act, in violation of 15

11  U.S.C. § 78dd-2(a), the United States would have to prove beyond a reasonable

12  doubt the following elements:

13      (a).    One, the Defendant, RICHARD JOHN NOVAK, acted

14              corruptly;

15      (b).    Second, the Defendant, RICHARD JOHN NOVAK, is a

16              domestic concern or acted as the agent of a domestic concern;

17      (c).    Third, the Defendant, RICHARD JOHN

18              NOVAK, made use of the mails or any

19              means or instrumentalities of interstate

20              commerce in furtherance of an unlawful act

21              under the Foreign Corrupt Practices Act;

22      (d).    Fourth, the Defendant, RICHARD JOHN

23              NOVAK, offered, paid, promised to pay, or

24              authorized the payment of money or

25              anything of value;

26      (e).    Fifth, the payment was to a foreign public

27              official, a foreign political party, an official

28              of a foreign political party, a candidate for

Plea Agreement - 5
P60310GJ.GJA.wpd

1      foreign public office, or to a third person

2      acting as a conduit to any person or party

3      listed above;

4   (f). Sixth, the payment was to influence any act

5      or decision of the recipient, to induce the

6      recipient to do or omit to do any act in

7      violation of the recipient's lawful duty, to

8      induce the recipient to use his or its

9      influence with a foreign government, or

10     instrumentality thereof, to affect or

11     influence any decision of such government

12     or instrumentality; or to obtain any improper

13     advantage; and

14   (g). Seventh, the payment was made to assist the

15     domestic concern in obtaining or retaining

16     business for or with, or directing business

17     to, any person.

18  5. Factual Basis and Statement of Facts:

19    The United States and the Defendant stipulate and agree that the following

20 facts are accurate; that the United States could prove these facts beyond a

21 reasonable doubt at trial; and that these facts constitute an adequate factual basis

22 for each of RICHARD JOHN NOVAK's guilty pleas.  This statement of facts does

23 not preclude either party from presenting and arguing, for sentencing purposes,

24 additional facts which are relevant to the guideline computation or sentencing,

25 unless otherwise prohibited in this agreement.

26 A. Overview

27    Between in or about the period April 1, 2002, and August 11, 2005,

28 Defendant RICHARD JOHN NOVAK joined a conspiracy with Dixie Ellen

Plea Agreement - 6
P60310GJ.GJA.wpd

1  Randock, Steven Karl Randock, Sr. and others to operate several so-called

2  "diploma mill" universities or Internet-based universities that were falsely

3  accredited and sold fraudulent degrees.  During this period, the diploma mill

4  universities run by the Randocks and others sold approximately $2,345,326.24 in

5  fraudulent academic products to thousands of persons located in the United States

6  and other locations.  Mr. NOVAK admits that he and his co-conspirators effected

7  their criminal conspiracy by, among other things, bribing foreign government

8  officials from the Republic of Liberia to falsely accredit the 'diploma mill'

9  universities that Dixie Ellen Randock, Steven Karl Randock, Sr. and others

10  operated.

11  B.     The So-Called "Diploma Mill" Universities

12       In the Eastern District of Washington and elsewhere, Mr. NOVAK admits

13  that he and Dixie Ellen Randock, Steven Karl Randock, Sr., Blake Alan Carlson,

14  Heidi Kae Lorhan, Amy Leann Hensley, Roberta Lynn Markishtum, Kenneth

15  Wade Pearson and others devised a scheme and artifice to defraud and to obtain

16  money and property by means of material false and fraudulent pretenses,

17  representations and promises and, for the purpose of executing the scheme and

18  artifice to defraud, used, and caused others to use, the United States Postal

19  Service, commercial interstate carriers and wire communications in interstate and

20  foreign commerce.

21       Mr. NOVAK admits that the object of the scheme and artifice to defraud

22  was to obtain money from persons in the United States and other countries around

23  the world by selling fraudulent academic diplomas, degrees and records that the

24  purchasers had not properly earned through actual accredited academic course

25  work.

26       These diplomas and other alleged academic products were issued by entities

27  doing business using names that included the following:  Saint Regis University,

28  James Monroe University, and Robertstown University.  Mr. NOVAK further

Plea Agreement - 7
P60310GJ.GJA.wpd

1  admits that each of these entities lacked any proper academic accreditation.

2  Collectively, these and other similar entities operated by the conspirators shall be

3  referred to as the diploma mill universities.

4      The diploma mill universities were operated from several locations in the

5  State of Washington and the United States and foreign countries.  Mr. NOVAK

6  further states that many of the operations for the diploma mill universities were

7  conducted by Dixie Ellen Randock and Steven Karl Randock, Sr. from Colbert,

8  Washington, Mead, Washington, and Post Falls, Idaho.

9      The National Board of Education, Inc. was an entity set up by Dixie Ellen

10  Randock as the parent organization of the so-called diploma mill universities.

11  Dixie Ellen Randock wanted to use the National Board of Education, Inc. to sell

12  fraudulent accreditations to other Internet-based diploma mill schools.

13  C.    The Use of Fictional and Falsely Credentialed Faculty

14      In or about April 2002, Mr. NOVAK agreed to work for Dixie Ellen

15  Randock.  Shortly thereafter, Mr. NOVAK learned that the academic products

16  Dixie Ellen Randock and Steven Karl Randock, Sr. were selling through their

17  diploma mill universities were false and fraudulent.  Mr. NOVAK further

18  understood that persons who purchased these degrees did so to obtain salary raises,

19  job promotions and other benefits using the fraudulent degrees.  Dixie Ellen

20  Randock said that she started Saint Regis University.

21      Dixie Ellen Randock used several aliases and false identities in connection

22  with the operation of these diploma mill universities.  Those aliases included the

23  name "Dr. Thomas Carper, Ph.D."  At one point during the scheme, Dixie Ellen

24  Randock told Mr. NOVAK that everyone wanted to talk to "Dr. Thomas Carper"

25  and they needed to "kill the name."

26      Dixie Ellen Randock also created false credentials for persons associated

27  with the diploma mill universities.  For example, Dixie Ellen Randock falsely

28  represented Mr. NOVAK's educational credentials in the Saint Regis University

Plea Agreement - 8
P60310GJ.GJA.wpd

1 brochure and on the Saint Regis University website by indicating that he had a PhD
2 in International Business and a Doctorate of Education in Educational
3 Administration and Psychology. When Mr. NOVAK found out that these
4 representations were being made, he demanded that the false credentials be deleted.

5 D.     False Accreditation from the Republic of Liberia

6        In or about May 2002, at the direction of Dixie Ellen Randock, Mr. NOVAK
7 began traveling from the State of Arizona to Washington, D.C., to obtain
8 documents from the U.S. State Department and foreign embassies in Washington,
9 D.C., for Saint Regis University and other diploma mill universities operated by
10 Dixie Ellen Randock.

11       Sometime later, Dixie Ellen Randock told Mr. NOVAK to try to get
12 accreditation for Saint Regis University from the Republic of Liberia in Africa
13 ("Liberia"). In this period, Mr. NOVAK asked Dixie Ellen Randock why Saint
14 Regis University could not get accreditation in the United States. Dixie Ellen
15 Randock told Mr. NOVAK, in substance, that for what we do, you cannot get
16 accredited in the United States. On one of these trips, in 2002, Mr. NOVAK went
17 to the Liberian Embassy in Washington, D.C., and met with a Liberian official
18 referred to hereinafter as the "Liberian Consul."

19       Mr. NOVAK told the Liberian Consul that Saint Regis University was an
20 Internet-based university. Mr. NOVAK asked the Liberian Consul what he had to
21 do to get accreditation for Saint Regis University. Mr. NOVAK showed the
22 Liberian Consul a catalogue that had been prepared by Dixie Ellen Randock. The
23 Liberian Consul told Mr. NOVAK that he would find out what could be provided
24 and how much it would cost.

25       The Liberian Consul subsequently informed Mr. NOVAK that if Mr.
26 NOVAK paid $4,000 U.S. currency then the Liberian Consul would get him
27 accreditation documents signed by the Commissioner of Higher Education for the
28 Republic of Liberia stating that Saint Regis University was accredited in Liberia.

Plea Agreement - 9
P60310GJ.GJA.wpd

1  Mr. NOVAK negotiated with the Liberian Consul and they ultimately agreed on a
2  price of approximately $2,250.

3  E.    Bribe Payments to a Liberian Official

4       Mr. NOVAK communicated with Dixie Ellen Randock in detail about Mr.
5  NOVAK's discussions with the Liberian Consul. Mr. NOVAK informed Dixie
6  Ellen Randock that the only way to get the Liberian accreditation she wanted for
7  Saint Regis University was to pay the Liberian Consul. Dixie Ellen Randock
8  instructed Mr. NOVAK to pay the Liberian Consul and told Mr. NOVAK generally
9  to do whatever was necessary to obtain accreditation from the Liberian government
10 official.

11      In or about June 2002, Dixie Ellen Randock authorized Amy Hensley to send
12 Mr. NOVAK a Western Union wire in the amount of $2,250 from the State of
13 Washington to Washington, D.C. Mr. NOVAK received the wired funds and then
14 gave $2,000 in cash to the Liberian Consul as a bribe to obtain the accreditation
15 from Liberia for Saint Regis University. Mr. NOVAK also obtained documents
16 from the Liberian Embassy for use with degrees sold by Saint Regis University.

17      In or about January 14, 2003, Mr. NOVAK traveled to Washington, D.C.,
18 and met with Dixie Ellen Randock and Steven Karl Randock, Sr. While in
19 Washington, D.C., Mr. NOVAK, Dixie Ellen Randock and Steven Karl Randock
20 agreed to pay another bribe of approximately $4,000 in cash to the Liberian
21 Consul. Steven Karl Randock gave Mr. NOVAK $4,000 in cash. Mr. NOVAK
22 then paid $4,000 to the Liberian Consul with the understanding that he would
23 provide additional accreditation documents to Saint Regis University.

24      The Liberian Consul and other Liberian government officials periodically
25 issued letters and other documents to third parties, such as academic credential
26 evaluating agencies that were trying to verify the legitimacy of Saint Regis
27 University, falsely representing that Saint Regis University was properly accredited
28 by Liberia.

Plea Agreement - 10
P60310GJ.GJA.wpd

1    After the bribe payments, Dixie Ellen Randock began to make
2 representations on the Saint Regis University website that Saint Regis University
3 was fully accredited by Liberia.
4    In time, the Liberian Embassy received many telephone inquiries regarding
5 the validity of the accreditation of Saint Regis University. The Liberian Consul
6 was upset about the volume of telephone inquiries to the Embassy. Mr. NOVAK
7 states that Dixie Ellen Randock suggested that they offer monthly payments to the
8 Liberian Consul for this assistance. Dixie Ellen Randock agreed to pay the
9 Liberian Consul $400 per month in exchange for Liberian Embassy employees
10 validating inquiries from the public about the legitimacy of Saint Regis University.
11 As a result, a series of payments to the Liberian Consul's personal bank account
12 were made. Between approximately October 2002 and September 2004,
13 approximately $19,200 was wired from an account in the State of Washington
14 controlled by Dixie Ellen Randock and Steven Karl Randock, Sr., to a bank
15 account in Maryland in the name of the Liberian Consul.
16 F.    The Involvement of Other Liberian Officials
17    In or about April, 2003, Mr. NOVAK traveled from the United States to
18 Liberia at the direction of Dixie Ellen Randock. On this trip to Liberia, Mr.
19 NOVAK met someone who represented himself as the Executive Director, National
20 Commission on Higher Education, Republic of Liberia (the "National Commission
21 Director"). Mr. NOVAK told the National Commission Director that he was there
22 to obtain accreditation documents for Saint Regis University. The National
23 Commission Director said that the accreditation documents would cost a certain
24 amount of money. Mr. NOVAK then negotiated with the National Commission
25 Director, and they agreed on a reduced amount of money. Mr. NOVAK knew that
26 the money he would be paying the National Commission Director was a bribe. Mr.
27 NOVAK discussed the need to make additional bribe payments to the National
28 Commission Director with Dixie Ellen Randock. Mr. NOVAK subsequently paid

Plea Agreement - 11
P60310GJ.GJA.wpd

1  the National Commission Director to receive documents of accreditation for Saint
2  Regis University. Subsequently, Mr. NOVAK received the certificates saying
3  Saint Regis University was accredited.

4       The Liberian Consul was removed from his employment at the Liberian
5  Embassy some time prior to August, 2003. In or about August 2003, Mr. NOVAK
6  and the former Liberian Consul flew from the United States to Ghana. The purpose
7  of the trip was to give the former Liberian Consul the opportunity to lobby Liberian
8  government officials, who were meeting in Ghana, to reappoint him to his position
9  at the Liberian Embassy in Washington, D.C. Dixie Ellen Randock and Steven
10 Karl Randock, Sr. paid all the expenses for the former Liberian Consul's trip to
11 Ghana for this purpose, plus approximately $1,000 in cash. In or about November
12 2003, the former Liberian Consul was re-instated to serve at the Liberian Embassy
13 in Washington, D.C.

14      During this trip to Ghana, Dixie Ellen Randock and Steven Karl Randock,
15 Sr. authorized Mr. NOVAK to pay a third Liberian official at the Liberian Embassy
16 in Accra, Ghana (the "third Liberian official") cash and other bribes in exchange
17 for providing positive responses to any inquiries regarding the legitimacy of the
18 diploma mill universities operated by Dixie Ellen Randock and Steven Karl
19 Randock, Sr.

20      On another trip to Liberia in October, 2003, at the direction of Dixie Ellen
21 Randock and Steven Karl Randock, Mr. NOVAK paid bribes to the National
22 Commission Director to obtain Certificates of Recognition and Accreditation for
23 two other diploma mill universities, Robertstown University and James Monroe
24 University, operated by Dixie Ellen Randock and Steven Karl Randock, Sr. The
25 total cash payments to the National Commission Director for the certificates was
26 approximately $15,580.

27      Thereafter, in or about 2004, the Director General of Higher Education for
28 the Republic of Liberia (the "Director General of Education") issued a disclaimer

Plea Agreement - 12
P60310GJ.GJA.wpd

1 letter about Saint Regis University stating that it was not recognized by the
2 Liberian Commission on Higher Education. This letter caused problems for Saint
3 Regis University. At a meeting in Liberia in or about January 2005, at the request
4 of Dixie Ellen Randock, Mr. NOVAK offered to pay the Director General of
5 Education $400 a month to make sure that there would be no additional problems
6 regarding the "accreditation" of Saint Regis University, Robertstown University,
7 and James Monroe University. Mr. NOVAK discussed the need to pay these bribes
8 with Dixie Ellen Randock, and she and Steven Karl Randock, Sr. arranged to send
9 the $400 per month to the Director General of Education by Western Union wire.

10 G.    Conclusion

11    Mr. NOVAK admits that this statement of facts does not represent, and is not
12 intended to represent, an exhaustive recitation of all the facts about which Mr.
13 NOVAK has knowledge relating to the criminal conspiracy described herein.

14    Mr. NOVAK admits that his actions, as recounted herein, were in all respects
15 intentional and deliberate, reflecting an intention to do something the law forbids,
16 and were not in any way the product of any accident or mistake of law or fact.

17    The foregoing statement of facts is a summary of the principal facts that
18 constitute the legal elements of the offenses to which Mr. NOVAK has agreed to
19 plead guilty. This summary does not include all of the evidence that the
20 government would present at trial or all the relevant conduct that would be used to
21 determine the Defendant's sentence.

22    6.    The United States Agrees:

23       a.    Dismissals:

24    At the time of sentencing, the United States agrees to move to dismiss
25 Indictment No. CR-05-180-3-LRS, which was filed against the Defendant on
26 October 5, 2005, and which charges the Defendant with wire/mail fraud conspiracy
27 and criminal forfeiture.

28

Plea Agreement - 13
P60310GJ.GJA.wpd

1            b.    Not to File Additional Charges:

2      The United States Attorney's Office for the Eastern District of Washington

3  and the Fraud Section, United States Department of Justice, agree not to bring any

4  additional charges against the Defendant or his wife, Jean Novak, based upon

5  information in the government's possession at the time of this Plea Agreement and

6  arising out of their conduct involving illegal activity charged in Indictment No.

7  CR-05-180-3-LRS and the Superseding Information, unless the Defendant breaches

8  this Plea Agreement any time before or after sentencing.

9         7.    United States Sentencing Guideline Calculations:

10      The Defendant understands and acknowledges that the United States

11  Sentencing Guidelines (hereinafter "U.S.S.G.") are applicable to this case and that

12  the Court will determine the Defendant's applicable sentencing guideline range at

13  the time of sentencing.

14            a.    Statutory Maximum Prison Term Applies:

15      The Defendant understands that the maximum statutory penalty for

16  conspiracy to commit mail/wire fraud and to violate the Foreign Corrupt Practices

17  Act, as charged in Count One of the Superseding Information, is five (5)-years in

18  prison, and that the maximum statutory penalty for violation of the Foreign Corrupt

19  Practices Act, as charged in Count Two of the Superseding Information, is five (5)-

20  years in prison.  The penalties for these two counts can be run consecutively.

21  Therefore, the Defendant understands that his term of imprisonment cannot exceed

22  ten (10)-years.

23            b.    Base Offense Level:

24      The United States and the Defendant agree that the base offense level for

25  Conspiracy to Commit Wire/Mail Fraud is six (6).  U.S.S.G. §2B1.1(a)(2) (2005

26  Guidelines).  The United States and the Defendant agree that the base offense level

27  for both the Conspiracy to Violate the Foreign Corrupt Practices Act and the

28

Plea Agreement - 14
P60310GJ.GJA.wpd

1   substantive violation of the Foreign Corrupt Practices Act in Count Two is twelve
2   (12). U.S.S.G. §2C1.1(a)(2).

3                    c.    Amount of Loss or Bribes:

4          The parties have agreed that Mr. NOVAK should not be held responsible for
5   the manufacture and sale of fraudulent academic products by Dixie Ellen Randock
6   and Steven Karl Randock, Sr. which occurred during the period August 4, 1999,
7   through March 31, 2002, because Mr. NOVAK had not yet joined the conspiracy.
8   The United States and the Defendant agree and stipulate that he did not join the
9   wire/mail fraud and Foreign Corrupt Practices Act conspiracy until on or about
10  April 1, 2002. The United States estimates that during the period April 1, 2002,
11  through August 11, 2005, the diploma mill businesses operated by Dixie Ellen
12  Randock and Steven Karl Randock, Sr., sold $2,345,326.24 in false and fraudulent
13  academic products.

14         In addition to his own acts, the United States and the Defendant agree and
15  stipulate that for Sentencing Guidelines purposes the Defendant should be held
16  accountable for all reasonably foreseeable acts and omissions of others in
17  furtherance of the jointly undertaken criminal activity that occurred while he was a
18  member of the conspiracy. The parties do not agree on the scope of the criminal
19  activity jointly undertaken by the Defendant. The United States contends that all of
20  the wire/mail fraud loss amount of $2.3 million was within the scope of the
21  Defendant's agreement. Therefore, including relevant conduct, the United States
22  contends that the base offense level for the wire/mail fraud conspiracy should be
23  increased by an additional sixteen (16) levels, to twenty-two (22), because the
24  wire/mail fraud loss is more than $1,000,000, but less than $2,500,000. U.S.S.G.
25  §2B1.1(b)(1)(I), (J) and U.S.S.G. §1B1.3. The Defendant contends that the loss
26  amount is less than $1 million because the scope of his agreement related solely to
27  obtaining documents in Washington, D.C., and to paying Liberian officials and did
28

Plea Agreement - 15
P60310GJ.GJA.wpd

1 not involve issuing false and fraudulent academic products. He reserves the right

2 to argue his position at sentencing.

3      The United States and the Defendant further agree and stipulate that the base

4 offense level for the conspiracy to violate the Foreign Corrupt Practices Act should

5 be increased an additional two (2) levels, to fourteen (14), because the offense

6 involved more than one bribe payment to a Liberian government official. U.S.S.G.

7 §2C1.1(b)(1). The United States and the Defendant further agree and stipulate that

8 the Defendant conspired to make bribe payments to Liberian government officials

9 in an amount which exceeds $30,000, but is less than $70,000. Therefore, his base

10 offense level for the conspiracy to violate the Foreign Corrupt Practices Act is

11 increased by an additional six (6) levels, to twenty (20). U.S.S.G. §§2C1.1(b)(2),

12 2B1.1(b)(1)(D).

13      d.    Number of Victims:

14      The United States and the Defendant also agree and stipulate that the base

15 offense level for the wire/mail fraud conspiracy is increased by an additional six (6)

16 levels, to twenty-eight (28), because the conspiracy to commit wire/mail fraud

17 involved a scheme to defraud 250 or more victims. U.S.S.G. §2B1.1(b)(2)(C).

18      e.    Misrepresentation Regarding Educational Organization:

19      The United States and the Defendant further agree and stipulate that the base

20 offense level for the wire/mail fraud conspiracy is increased by an additional two

21 (2) levels, to thirty (30), because the conspiracy to commit wire/mail fraud

22 involved a misrepresentation that the Defendant was acting on behalf of an

23 educational organization. U.S.S.G. §2B1.1(b)(8)(A).

24      f.    Mitigating Role :

25      The Defendant reserves the right to seek a mitigating role downward

26 adjustment pursuant to U.S.S.G. §3B1.2. The United States reserves the right to

27 oppose the Defendant's request.

28

Plea Agreement - 16
P60310GJ.GJA.wpd

1        g.    Acceptance of Responsibility:

2        If the Defendant pleads guilty and demonstrates a recognition and an
3   affirmative acceptance of personal responsibility for the criminal conduct; provides
4   complete and accurate information regarding the circumstances of his offenses and
5   his present financial condition to the United States and the Probation Office during
6   the sentencing process; does not commit any obstructive conduct; accepts this Plea
7   Agreement; and enters pleas of guilty no later than March 20, 2006; the United
8   States will move for a three (3)-level downward adjustment in the offense level for
9   the Defendant's timely acceptance of responsibility, pursuant to U.S.S.G. §3E1.1(a)
10  and (b).

11       The Defendant and the United States agree that the United States may at its
12  option and upon written notice to the Defendant, not recommend a three (3)-level
13  downward reduction for acceptance of responsibility if, prior to the imposition of
14  sentence, the Defendant is charged or convicted of any criminal offense whatsoever
15  or if the Defendant tests positive for any controlled substance.

16       Furthermore, the Defendant agrees to pay the aggregate $200 mandatory
17  special penalty assessment to the Clerk of Court for the Eastern District of
18  Washington, at or before sentencing, and shall provide a receipt from the Clerk to
19  the United States before sentencing as proof of this payment, as a condition to this
20  recommendation by the United States.

21       h.    Criminal History:

22       The United States and the Defendant believe that the Defendant does not
23  have any prior criminal history.  However, the parties understand that the
24  Defendant's criminal history computation is tentative and that ultimately the
25  Defendant's criminal history category will be determined by the Court after review
26  of the Presentence Investigation Report.  The United States and the Defendant have
27  made no agreement and make no representations as to the criminal history

28

Plea Agreement - 17
P60310GJ.GJA.wpd

1 category, which shall be determined after the Presentence Investigation Report is
2 completed.

3        i.      Final Offense Level:

4        The United States contends that the Final Offense Level for conspiracy to
5 commit wire/mail fraud is twenty-seven (27), unless the United States files a
6 motion under U.S.S.G. §5K1.1 or the Defendant seeks and the Court determines
7 that a minor participant or some other downward adjustment/departure is
8 applicable. The parties agree and stipulate that the Final Offense Level for
9 conspiracy to violate the Foreign Corrupt Practices Act is seventeen (17), unless
10 the United States files a motion under U.S.S.G. §5K1.1 or the Defendant seeks and
11 the Court determines that some other downward adjustment/departure is applicable.
12 The parties further agree and stipulate that the Defendant's payment of bribes to
13 Liberian government officials was committed for the purpose of facilitating the
14 commission of another criminal offense, specifically, conspiracy to commit
15 wire/mail fraud and that the cross reference in the guideline requires the Court to
16 apply the guideline applicable to the conspiracy to commit wire/mail fraud if the
17 resulting offense level is higher. U.S.S.G. §2C1.1(c)(1). Assuming that the Court
18 ultimately determines that the resulting offense level for conspiracy to commit
19 wire/mail fraud is greater than the resulting offense level for the conspiracy to
20 violate the Foreign Corrupt Practices Act, the parties further agree and stipulate
21 that the offense guideline for the conspiracy to commit wire/mail fraud should be
22 applied. U.S.S.G. §2C1.1(c)(1).

23        8.      Departures:

24        The Defendant reserves the right to seek one or more downward departures
25 at the time of sentencing. The United States reserves the right to oppose the
26 Defendant's request for any downward departure. The United States will not seek
27 any upward departure from the applicable sentencing guidelines range.

28

Plea Agreement - 18
P60310GJ.GJA.wpd

9.    <u>Substantial Assistance</u>:

The United States agrees to furnish the Defendant an opportunity to provide "substantial assistance," that is, information and assistance in the investigation and prosecution of other persons. The Defendant agrees to meet with federal and state law enforcement agents in an attempt to assist them in obtaining information that would form the basis of a motion for a downward departure to be filed pursuant to U.S.S.G. §5K1.1. The Defendant understands that whether any such information amounts to substantial assistance is a determination left to the United States.

A.    The Defendant understands and agrees to participate in full debriefings by federal and state investigative agencies about the Defendant's knowledge of illegal conduct, at times and places to be decided by these agencies. The Defendant agrees to provide complete, accurate, and truthful information during the debriefings. Such debriefings may involve the use of a polygraph, if requested by the agencies. It is understood that the Defendant may have an attorney present at the debriefings. The Defendant also agrees to participate in any future court proceeding involving any named or unnamed coconspirators and any other persons involved in criminal activity, by testifying completely and truthfully. Such court proceedings include grand jury proceedings, pre-trial hearings, trials, and sentencing hearings.

B.    The Defendant agrees that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its recommendation for sentence if the Defendant fails to provide truthful, complete and honest information during debriefings, testimony before the grand jury, or any court proceedings, or if the Defendant fails a polygraph examination. The determination whether the Defendant has failed a polygraph examination shall be made by the Court.

C.    The Defendant understands this agreement does not protect him from prosecution for perjury, obstruction of justice, or any other offense should the

Plea Agreement - 19
P60310GJ.GJA.wpd

1  Defendant commit any crime during the Defendant's cooperation under this
2  agreement.

3              D.      The Defendant understands further that if the United States
4  determines that the Defendant has provided "substantial assistance" and a motion is
5  made, the Court will be free to impose any sentence, even one below the applicable
6  Guidelines sentencing range. If a "substantial assistance" motion is filed, both the
7  United States and the Defendant will be free to make a specific recommendation
8  with respect to any reduction of sentence. It is understood that the United States
9  will inform the sentencing judge about the timing and extent of the Defendant's
10 cooperation.

11             E.      The Defendant understands that, if the United States files a
12 motion indicating the Defendant has provided "substantial assistance," the
13 appropriate reduction shall be determined by the Court for reasons including
14 consideration of the following: (1) the Court's evaluation of the significance and
15 usefulness of the Defendant's assistance, taking into consideration the United
16 States' evaluation of the assistance rendered; (2) the truthfulness, completeness,
17 and reliability of any information or testimony provided by the Defendant; (3) the
18 nature and extent of the Defendant's assistance; (4) any injury suffered, or any
19 danger or risk of injury to the Defendant or the Defendant's family resulting from
20 the Defendant's assistance; and (5) the timeliness of the Defendant's assistance.
21 See U.S.S.G. §5K1.1(a)(1)-(5).

22             10.    Delay Sentencing, If Necessary, To Complete Substantial Assistance:

23             The United States and the Defendant stipulate and agree to move the Court
24 jointly, if necessary, to continue the imposition of judgment and sentence on Mr.
25 NOVAK so that he may complete his substantial assistance to law enforcement
26 authorities and so that the United States may present the Court with appropriate
27 information about the nature, quality, and value of Mr. NOVAK's cooperation.
28 The parties understand that the Court will determine, in the exercise of its

Plea Agreement - 20
P60310GJ.GJA.wpd

1  discretion, whether or not to grant any motion for a continuance of the sentencing
2  hearing.

3      11.    Incarceration:

4      The United States agrees to recommend that the Court impose a sentence at
5  the low end of the applicable sentencing guideline range, absent a motion by the
6  United States for a downward departure pursuant to U.S.S.G. §5K1.1and/or the
7  Court granting any downward adjustments or departures.

8      12.    Criminal Fine:

9      The United States and the Defendant are free to make whatever
10  recommendation concerning the imposition of a criminal fine that they believe is
11  appropriate.

12      13.    Supervised Release:

13      The United States and the Defendant agree to recommend that the Court
14  impose a three (3)-year term of supervised release to include the following special
15  conditions, in addition to the standard conditions of supervised release:

16          i.  that the Defendant's person, residence, office, vehicle, and
17  belongings are subject to search at the direction of the Probation Officer;

18          ii.  that the Defendant provide financial information, provide
19  copies of Federal income tax returns and allow credit checks, at the direction of the
20  Probation Officer;

21          iii.  that the Defendant shall disclose all assets and liabilities to the
22  Probation Officer and shall not transfer, sell, give away, or otherwise convey or
23  secret any asset, without the advance approval of the Probation Officer;

24          iv.  that the Defendant be prohibited from incurring any new debt,
25  opening new lines of credit, or enter any financial contracts or obligations without
26  the prior approval of the Probation Officer; and

27          v.  that the Defendant be prohibited from working in the educational
28  field.

Plea Agreement - 21
P60310GJ.GJA.wpd

1    14.    Restitution:

2        The amount of restitution has not been determined at this time. However,

3    the United States and the Defendant hereby stipulate and agree that, pursuant to 18

4    U.S.C. §§ 3663, 3663A and 3664, the Court should order restitution to any victims

5    identified by the Court and in an amount to be determined by the Court. The

6    Defendant further understands that the amount of restitution determined by the

7    Court could be as high as $2,345,326.24, which should be imposed jointly and

8    severally with co-defendants.

9    15.    Mandatory Special Penalty Assessment:

10        The Defendant agrees to pay the aggregate $200 mandatory special

11    assessment to the Clerk of Court for the Eastern District of Washington, at or

12    before sentencing, pursuant to 18 U.S.C. § 3013, and shall provide a receipt from

13    the Clerk to the United States before sentencing as proof of this payment.

14    16.    Payments While Incarcerated:

15        If the Defendant lacks the financial resources to pay the monetary

16    obligations imposed by the Court, the Defendant agrees to earn the money to pay

17    toward these obligations by participating in the Bureau of Prisons' Inmate

18    Financial Responsibility Program.

19    17.    Additional Violations of Law Can Void Plea Agreement:

20        The Defendant and the United States agree that the United States may at its

21    option and upon written notice to the Defendant, withdraw from this Plea

22    Agreement or modify its recommendation for sentence if, prior to the imposition of

23    sentence, the Defendant is charged or convicted of any criminal offense whatsoever

24    or if the Defendant tests positive for any controlled substance.

25    18.    Conditional Waiver of Appeal Rights:

26        The Defendant agrees to waive the right to appeal the sentence if the Court

27    imposes a prison term of no longer than 60 months, imposes a term of supervised

28

Plea Agreement - 22
P60310GJ.GJA.wpd

1  release of no longer than three (3) years, and orders the Defendant to pay restitution
2  in an amount not to exceed $2,345,326.24.

3       19.   Integration Clause:

4       The United States and the Defendant acknowledge that this document
5  constitutes the entire Plea Agreement between the United States and the Defendant,
6  and no other promises, agreements, or conditions exist between the United States
7  and the Defendant concerning the resolution of the case. This Plea Agreement is
8  binding only upon the United States Attorney's Office for the Eastern District of
9  Washington and the Fraud Section, U.S. Department of Justice, and cannot bind
10 other federal, state or local authorities. The United States and the Defendant agree
11 that this agreement cannot be modified except in a writing that is signed by the
12 United States and the Defendant.

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plea Agreement - 23
P60310GJ.GJA.wpd

1    <u>Approvals and Signatures</u>

2         Agreed and submitted on behalf of the United States Attorney's Office for

3    the Eastern District of Washington and the Fraud Section, U.S. Department of

4    Justice.

5    James A. McDevitt
     United States Attorney



6

7    George J.C. Jacobs, III                          Date
8    Assistant U.S. Attorney

9

10   Paul E. Pelletier
     Acting Chief, Fraud Section
11   U.S. Department of Justice

12

13   Mark F. Mendelsohn                               Date

14   Deputy Chief, Fraud Section
15   U.S. Department of Justice

16

17   Adam Reeves                                      Date

18   Trial Attorney, Fraud Section

19

20        I have read this Plea Agreement and have carefully reviewed and discussed

21   every part of the agreement with my attorney.  I understand and voluntarily enter

22   into this Plea Agreement.  Furthermore, I have consulted with my attorney about

23   my rights, I understand those rights, and I am satisfied with the representation of

24

25

26

27

28

Plea Agreement - 24
P60310GJ.GJA.wpd

1 my attorney in this case. No other promises or inducements have been made to me,

2 other than those contained in this Plea Agreement, and no one has threatened or

3 forced me in any way to enter into this Plea Agreement. I am agreeing to plead

4 guilty because I am guilty.

5

6 _____     3-20-06
                                      _____

7 RICHARD JOHN NOVAK                  Date
Defendant

8

9      I have read the Plea Agreement and have discussed the contents of the

10 agreement with my client. The Plea Agreement accurately and completely sets

11 forth the entirety of the agreement between the parties. I concur in my client's

12 decision to plead guilty as set forth in the Plea Agreement. There is no legal reason

13 why the Court should not accept the Defendant's pleas of guilty.

14

15 _____     3/21/06
                                      _____

16 Thomas M. Hoidal                    Date
Attorney for the Defendant

17

18

19

20

21

22

23

24

25

26

27

28

Plea Agreement - 25
P60310GJ.GJA.wpd