Peter S. Schweda
Waldo, Schweda & Montgomery, P.S.
2206 North Pines Road
Spokane, WA 99206
509/924-3686
Fax:  509/922-2196

Attorney for Defendant
Steven Randock

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON
(HONORABLE LONNY R. SUKO)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | NO. CR-05-180-LRS |
| | ) | |
| vs. | ) | OBJECTIONS AND CORRECTIONS |
| | ) | TO PRESENTENCE REPORT |
| STEVEN KARL RANDOCK, SR., | ) | |
| | ) | |
| Defendant. | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |

        COMES NOW, the Defendant, Steven K. Randock, Sr., by and through his

appointed counsel Peter S. Schweda, and for objections and corrections to the

Presentence Report states as follows (for ease of application the Objections are

numbered the same as the paragraphs in the Presentence Report):

        Page 2:  The Report lists one dependent.  However, Mr. Randock also has

dependent upon him for the necessities of life Dixie Randock's mother and a granddaughter.

Paragraphs 11 and 13:  The Letter of Dr. George Gollin is objected to.  Dr. Gollin cites examples that have nothing to do with the instant case.  For example, a majority of his letter discusses James Kirk and LaSalle University and numerous other "degree mills" that have no connection with this Defendant or the Defendants in this case whatsoever.  Further, Dr. Gollin cites as authority newspaper stories for facts that he is alleging.  Dr. Gollin makes assumptions regarding "victims", their losses and third party losses by making guesses.

Paragraph 12:  The Presentence Report author freely admits that her recitation of fact is based only upon Secret Service and Internal Revenue Service reports and an interview with the Secret Service case agent.  Therefore, it is slanted towards the case agent and Government.

Paragraph 16:  It is reported that there were 8200 "customers" and 10,000 fraudulent degrees.  However, no evidence to substantiate this is presented.   The degrees were based upon life experience as reported by the "customers."

Paragraph 17:  St. Regis University was established in Dominica by the formation of two corporations.  Dominican attorney, Alex Lawrence, was relied upon for his advice in establishing the corporations. St. Regis University did have standing

OBJECTIONS AND CORRECTIONS TO THE
PRESENTENCE REPORT - 2

Waldo, Schweda & Montgomery, P.S.
2206 North Pines Road
Spokane, WA 99206
509/924-3686
Fax:  509/922-2196

in Dominica pursuant to the corporations.

Paragraph 18:  The Report indicates that of the 8200 customers 1128 were foreigners from 89 different countries.  However, there is no evidence of this presented.  It further states that foreign consumers "believed that the degrees would help them secure H-1B Visas for use in obtaining legitimate employment in the United States."  The factual basis for this conclusion is not presented.  The Defendants in this case have no way of knowing how or what foreign consumers believed the degrees could be used for.

Paragraph 19:  Dixie Randock did establish a Liberian Embassy website.  However, it was turned over to the Liberian Embassy and had the Embassy address and telephone number on it.

Paragraph 24:  This paragraph lists different schools established by the Defendants.  The Report states:  "these entities were nonexistent shells that conducted no authentic or academic business."  However, this depends on how a person might look at it.  At the time there were no government laws or regulations governing who or how you could establish a college or university or any degree granting institution.  Further, there were no government laws or rules regarding who may or may not accredit a college or university.  The Defendants granted life experience degrees.

Paragraphs 25 and 26:  These paragraphs state that there were "defrauded

Waldo, Schweda & Montgomery, P.S.
2206 North Pines Road
Spokane, WA 99206
509/924-3686
Fax:  509/922-2196

consumers" however, the consumers that dealt with the Defendants knew what they were getting into. They knew that there were no classes and that degrees would be based upon life experiences. They were also advised to use the degrees for lawful purposes as stated on the websites that were used by the consumers to apply for degrees.

Paragraphs 27-30: These paragraphs describe various counterfeit degrees issued in the name of actual universities. However, these degrees were issued by Amy Hensley without the sanction of any other Defendants.

Paragraph 31: This paragraph describes Mr. Randock as using the alias "Fr. Frendock." Frendock is the Defendant's historical family name. Frendock was changed to Randock by the Defendant's father to avoid discrimination earlier in the last century.

Paragraph 32: This paragraph describes the Defendants operating an internet site, Transcriptrecords.com which enabled degree buyers to request copies of transcripts to employers, etc. The Defendants did not operate transcriptrecords.com. However, the Defendants did archive degrees and transcripts not only from their schools but any school a consumer wanted to place in the archives. A nominal fee was charged to do this.

Paragraph 35: Amy Hensley states that she earned approximately $60,000.00

OBJECTIONS AND CORRECTIONS TO THE
PRESENTENCE REPORT - 4

Waldo, Schweda & Montgomery, P.S.
2206 North Pines Road
Spokane, WA 99206
509/924-3686
Fax: 509/922-2196

in commissions, none of which was reported to Internal Revenue Service. However, Steven Randock instructed Amy Hensley many times, in person and by email, to account for all commissions on from 1099s. If this was not done, it was a result of Amy Hensley's direct actions.

Paragraph 39: This paragraph attributes Amy Hensley as saying that the "academic products were fictitious, false and fraudulent". However, these were life experience degrees and no law prevented granting them. Liberian accreditation was obtained from Liberian officials. Liberian officials deny ever being bribed. St. Regis University eventually lost Liberian accreditation after pressure from the United States State Department on the Liberian Government relating to education funding from the United States.

Paragraph 47: This paragraph reports that Ms. Hensley stated that payments were diverted from the Bank of Fairfield to the Bank of Caribe. However, no money was diverted from the Bank of Fairfield to the Bank of Caribe. An initial deposit to the Bank of Caribe of $2,500.00 came from another bank. The Defendant had been advised that money earned outside the United States would not be taxed until it was brought into the United States. The Bank of Caribe account included money earned from foreign customers. The Defendant has never had an account in Panama. Money was sent to India for an individual named Azad, see infra, who stole the money.

Waldo, Schweda & Montgomery, P.S.
2206 North Pines Road
Spokane, WA 99206
509/924-3686
Fax: 509/922-2196

Paragraph 48:  The Defendant never accused Amy Hensley of embezzling $60,000.00.  Ms. Hensley failed to pay approximately $60,000.00 to the IRS for withholding taxes.  When the Defendant learned of this nonpayment, he paid the same to the Internal Revenue Service.  Ms. Hensley never showed the Defendant the money was in transit.  Regarding Ms. Hensley's accusation that the funds of the Defendants were "hopelessly comingled" it must be remembered that Ms. Hensley was the bookkeeper for the Defendants and responsible to keep things uncomingled.  According to Discovery, on August 11, 2005, pursuant to search warrants financial records were seized at Ms. Hensley's home.  However, government agents did not seize a computer that had QuickBooks records on it.  The QuickBooks records were the Defendants' financial records.  The Defendants, through their respective counsel, during the pendency of the incident proceedings requested that this computer be examined for these records.  However, counsel for Ms. Hensley refused to accede to this request.  Ms. Hensley continued to be the bookkeeper until the spring of 2005.

Paragraph 52 and 59:  In these paragraphs Richard Novak states that he learned that St. Regis University was a diploma mill.  However, Mr. Novak obtained Liberian accreditation.  The Defendants were not aware of bribes but believed that they were paying costs of the accreditation process.  All Liberian officials deny that they had ever been bribed.  Mr. Novak stated that St. Regis University had been accredited and

Waldo, Schweda & Montgomery, P.S.
2206 North Pines Road
Spokane, WA 99206
509/924-3686
Fax:  509/922-2196

gave the Defendants Liberian documents that said that school was accredited.  Mr. Randock has never heard his wife Dixie Randock use the term 'bribe."

Paragraph 64-73:  The Defendant is not aware of any "bribes."  Mr. Randock was aware that the accreditation process would cost money.  Mr. Novak was in charge of the accreditation process.  Mr. Novak was given materials for accreditation such as a school catalog.  Mr. Novak indicated that the school needed to have a Liberian presence.  Therefore, the Defendants funded the lease of office space, purchase of equipment (computers, generator, etc.), and had on-site personnel.  This all required money.  Mr. Novak told us how much he needed and the Defendants would send him the money.  If bribes were made, Mr. Novak made the bribes and never told the Defendants of this.

Paragraphs 73-74:  These paragraphs describe a trip by Mr. Novak to Ghana in August, 2003, for the purpose of reinstating the former Liberian Consul, who had been removed from that post in Washington D.C.  Mr. Novak indicates that he was sent to convince the Liberian Government to recognize St. Regis and reinstate the Liberian Consul.  However, how would the Defendants have power to reinstate the Liberian Consul.  They would have no power to determine who was posted in embassies.

Paragraph 75:  This paragraph indicates that Mr. Novak paid a bribe to the

Waldo, Schweda & Montgomery, P.S.
2206 North Pines Road
Spokane, WA 99206
509/924-3686
Fax:  509/922-2196

Liberian National Commission Director to obtain recognition and accreditation for Roberts Town University and James Monroe University.  If a bribe was paid, it was done by Mr. Novak without the Defendant's knowledge.  The Defendants believe that they are providing costs for accreditation.

Paragraph 76:  This paragraph describes, through Mr. Novak, that the Director of Higher Education for Liberia issued a letter disclaiming accreditation for St. Regis University in 2004.  Such a letter was written but, it was later recanted.  Mr. Novak never stated that he was "bribing" officials, but he stated he was paying costs for accreditation.

Paragraph 77:  This paragraph includes an email supposedly authored by Dixie Randock.  The purpose it serves in the Presentence Report is to inflame unfair prejudice against the Defendant.  It is irrelevant and should be stricken pursuant Federal Rule of Evidence 403.  There is no evidence that this email was ever sent.

Paragraph 78:  In this paragraph Mr. Novak describes a trip taken by Steven Randock to India.  Mr. Novak was not present during this trip.  The paragraph also indicates that Mr. Carlson stated that Steven Randock had an individual named Azad arrested and beaten.  Again, Mr. Carlson was not present for the trip.  A Mr. Azad had received money from the Defendants to work for them in an attempt to obtain Indian accreditation.   Mr. Azad did not do the work he agreed to do.  Mr. Randock

Waldo, Schweda & Montgomery, P.S.
2206 North Pines Road
Spokane, WA 99206
509/924-3686
Fax:  509/922-2196

hired attorneys to find Azad and report him the police for theft.  Mr. Randock has heard that he was beaten.  Mr. Randock only saw Mr. Azad slapped and hit on the feet with bamboo sticks.  Mr. Randock never saw Mr. Azad hung upside down, naked or beaten.  Further, it is moved that this paragraph be removed from the Presentence Report in that its only purpose is to inflame unfair prejudice and the paragraph is irrelevant under Evidence Rule 403.

Paragraph 80:  In this paragraph Mr. Novak relates that he is familiar with the situation where two Georgia teachers used St. Regis University degrees to obtain better pay and were subsequently dismissed from their positions.  Mr. Randock is unaware of this situation.  There is insufficient information provided to determine if this actually happened.  Nor are there any facts shown that the Defendant had any part in these bare allegations.

Paragraph 81: It should be clarified that the off-shore account in Dominica is the Bank of Caribe which the Defendants are forfeiting to the Government.  There is no evidence that the Defendants had any bank accounts in Panama or Cypress.

Paragraph 106:  The Children's Future Trust is a living trust for the benefit of the Defendant and Dixie Randock and their five (5) children after they pass away.

Paragraph 108:  This paragraph is objected to in that Heidi Lorhan's letter to

Waldo, Schweda & Montgomery, P.S.
2206 North Pines Road
Spokane, WA 99206
509/924-3686
Fax:  509/922-2196

Regis University is totally unrelated to the charges and therefore, pursuant to Evidence Rule 403 is intended to enflame unfair prejudice against the Defendant.

Paragraph 112:  Ms. Markhishtum is reported to deliver checks to the Defendant once or twice per month.  However, May Hensley deposited these checks while working for the Defendants and did not deliver them to the Defendant.

Paragraph 131:  It is reported that Mr. Carlson told investigators that Dixie Randock and Steven Randock, Sr., were in charge of the diploma mills and also served as advisors.   However, Steven Randock, Sr., was not in charge and was not an advisor.

Paragraph 148:  In this paragraph the Defendant is alleged to have stated that the online schools were to be legitimate like the University of Phoenix; however, "they did not end up that way."  The Defendant never said the quoted portion. Further, this paragraph should be supplemented by indicating that the Defendant cooperated with the officers giving them the location and key for a safe deposit box with $43,000.00 in it, giving them cash that he had within the home and in his car and the combination to the office safe.

Paragraph 172:  Mr. Pearson commented that the Defendant used the name "Steven Frendock."  As noted above Frendock is the previous family name.

Paragraph 182:  This paragraph indicates that an undercover agent purposely

Waldo, Schweda & Montgomery, P.S.
2206 North Pines Road
Spokane, WA 99206
509/924-3686
Fax:  509/922-2196

answered approximately 75 percent of 125 questions incorrectly in order to judge the integrity of the test scoring system for a high school degree. However, as noted in the affidavit for the search warrants, the agent only knew answers to 50 percent of the questions and therefore, it would impossible for him to purposefully answer 75 percent of the questions wrong.  This portion of the PSR should be corrected.

Paragraph 198:  This paragraph indicates that Richard Novak met with undercover agents in Washington D.C. "acting as a representative of the Randocks." However, as noted in a surveillance video of that meeting, Mr. Novak signed a non-compete agreement with the agents so that he would be only their representative and not the representative of anyone else, including the Defendants.  This paragraph should be corrected accordingly.

Paragraph 206:  The PSR indicates that at least 124 current federal employees purchased degrees.  This paragraph does not indicate whether the employees are still employed by the Government or what happened to them as a result of having a degree.  Therefore, it provides no evidence and should be stricken.

Paragraph 219-223:  These paragraphs indicate that a Mr. M. provided charitable donations to be used in Africa.  These paragraphs do not mention that charitable donations were made through the Minister of Education in Liberia, Dr. Besman, Bob Stefianik and Rick Novak.  These paragraphs should be corrected

Waldo, Schweda & Montgomery, P.S.
2206 North Pines Road
Spokane, WA 99206
509/924-3686
Fax: 509/922-2196

accordingly.

Paragraph 224:  This paragraph is objected to because of its conclusory nature. It states that hundreds of people purchased fraudulent degrees without any evidence as to who might have felt that their degree was fraudulent.  It goes on to say that many used the degrees to obtain employment or advancement without any evidence whatsoever of this.  Further, it states that some consumers had lost employment and that others may be prosecuted without naming any of such consumers or providing any evidence.   This paragraph should be deleted.

Paragraph 225:  This paragraph implies that the employers of the individuals purchasing degrees are the victims.  This paragraph is objected to.  The only possible victims in this case could be the consumers who purchased degrees.  The Defendant was not in a "jointly undertaken criminal activity" with the consumers who purchased degrees.  Therefore, this would not be relevant, conduct pursuant to U.S.S.G. § 1B1.3(a)(1)(B).  See Sentencing Memorandum on this subject which is incorporated herein by this reference.  The Defendant did not offer counterfeit degrees nor permit that counterfeit degrees be issued.  This was the independent acts of Amy Hensley.

Paragraph 233:   The estimate of gain in excess of $2,500, 000.00 is objected to.  There is no evidence upon which the court can make this conclusion.   See Sentencing Memorandum on the standard of proof required.

Waldo, Schweda & Montgomery, P.S.
2206 North Pines Road
Spokane, WA 99206
509/924-3686
Fax:  509/922-2196

Paragraph 234:  The Defendant agrees that the offense included mass marketing, however, there is no evidence whatsoever that the case involved an excess of 250 victims.  As indicated in the PSR in a number of occasions, for example in paragraph 233, the consumers realized what they were purchasing.  Therefore, they cannot be victims.  Third parties cannot be victims, such as employers, because the defendants were not in a "jointly undertaken criminal activity."  See Sentencing Memorandum on this subject.  Therefore, under the Guideline cited in this paragraph, there should only be a 2 level increase given.

Paragraph 235:  The offense does not involve the misrepresentation that the Defendant was acting on behalf of an educational organization.  Please see Sentencing Memorandum on this subject.  Therefore, a 2 level increase should not be given.

Paragraph 236:  There is evidence that the Defendant's business relocated to Post Falls, but, there is no evidence that it was done to evade law enforcement or regulatory officials.  In fact, the Defendants believed that they were obeying a new law about storage of records in Washington State.  Therefore, a 2 level increase should not be given.

Paragraph 238:  The Defendant should not receive a 4 level increase as being an organizer or leader.  The Defendant's role was limited.  Any acts by the Defendant

Waldo, Schweda & Montgomery, P.S.
2206 North Pines Road
Spokane, WA 99206
509/924-3686
Fax:  509/922-2196

were at the behest of Dixie Randock.  The PSR states that Dixie Randock organized

the scheme and recruited the co-conspirators.  It does not say that the Defendant did

so.  Further, see the Sentencing Memorandum on this subject which is incorporated

herein by this reference.

Paragraph 240:  The offense level should be 8.

Paragraph 242:  If the court determines that the offense level is less than 16, the

additional one level reduction should not be given.

Paragraph 243:  The adjusted offense level should be 6.

Paragraph 245:  The total offense level should be 6.

Paragraph 253:  While the Defendant was arrested for possession of stolen

property, it must be made clear that he was acquitted of the charge by a bench trial,

not a jury.  The alleged stolen property was purchased from Dixie Randock's

nephew, not the nephew of the Defendant, and had a used value of approximately

$2,000.00 or less.  The Defendants was attempting to help the nephew and his family

out who were having hard financial times.  The Defendant had no idea that these

items he had purchased were from any type of burglary whatsoever.  This paragraph

should be corrected accordingly.

Paragraph 256:  This paragraph should be supplemented to indicate that after

the Defendant's parents relocated to Spokane in 1972, he rebuilt a home for them on

Waldo, Schweda & Montgomery, P.S.
2206 North Pines Road
Spokane, WA 99206
509/924-3686
Fax:  509/922-2196

the Southill, did yard work and made sure they had everything they needed. After the Defendant's father passed away, he took care of his mother who did not drive, taking her to go shopping and maintaining her home.

Paragraphs 261-264: The Defendant's health condition is inadequately explained. It is supplemented in the Sentencing Memorandum and the attachments thereto. The Sentencing Memorandum on the subject is incorporated herein by this reference and the Court should direct the PSR Officer to supplement these paragraphs.

Paragraph 265: The medications that the Defendant is presently taking are different than some of those stated in the Report. This paragraph should be updated. See Sentencing Memorandum on the subject.

Paragraph 266: The Defendant's depression since his last bypass surgery in May, 2008, has worsened. Further, the Defendant is worried that his wife, Dixie Randock, will be incarcerated. The Defendant depends on her to administer medications which are complicated and given at different times during the day.

Paragraph 373: The financial information is somewhat incorrect. It should indicate that the Defendant owes $13,000.00 in back Real Estate Taxes on his home and that he has borrowed approximately $20,000.00 from this sons for living expenses, a business loan to keep the A+ Real Estate School going and to purchase a

Waldo, Schweda & Montgomery, P.S.
2206 North Pines Road
Spokane, WA 99206
509/924-3686
Fax: 509/922-2196

new well pump at the home which needed to be replaced.  The income section is incorrect.  The Defendant's net salary was $971.00 and has just been increased to $993.00 from Social Security.  Dixie Randock's salary is the $2,000.00 that is indicated from her real estate school.

Paragraph 275:  In this paragraph it states, "there has been speculation by investigators that they may have money in off-shore accounts or in alternate names." Other than pure speculation, there is no evidence to substantiate this.  This sentence should be deleted.

Paragraph 277:  The total offense level should be stated as 6 and criminal history category of 1 with a Guideline range for imprisonment of 0 to 6 months. Pursuant to the Plea Agreement, the Defendant has stipulated to serve a 3 year sentence but, may request that he be allowed to have alternative confinement such as home detention.

Paragraph 281:  The correct Guideline range is Zone A and probation is authorized.  This paragraph should be corrected to reflect the same.

Paragraph 289:  This paragraph indicates that there is no information that would warrant a departure from the Sentencing Guidelines.  However, if the Court finds some of the aggravating adjustments should be given, this paragraph would be incorrect.  As demonstrated by the Sentencing Memorandum and its attachments, the

Waldo, Schweda & Montgomery, P.S.
2206 North Pines Road
Spokane, WA 99206
509/924-3686
Fax:  509/922-2196

Defendant has serious health problems that should be considered for a downward variance and home confinement.

Paragraph 294:  This paragraph states, "it is estimated that approximately $7,000,000.00 in income was generated by this scheme."  An estimate is not proof. This does not comply with the standard of proof necessary.  See Sentencing Memorandum.  Further, the paragraph should be corrected to reflect that the Randocks did not employ Richard Novak to bribe Liberian Government officials. The Randocks employed Mr. Novak to obtain accreditation and knew that there would be costs associated with it.  Further, Richard Novak was not employed by this Defendant.  He was employed by Dixie Randock.

Paragraph 295:  This paragraph states in part, "the income generated in the scheme was hidden in various bank accounts, including off-shore accounts."  There is no evidence whatsoever that any money was hidden in any bank.  The Government has had no trouble finding all of the bank accounts and has obtained bank records for them.  The off-shore account is being forfeited to the Government and therefore should not be labeled as "hidden."  There is no evidence that the Defendants tried to avoid law enforcement detection.

Paragraph 296:  This paragraph should be supplemented to indicate that the Defendant is very concerned about another stroke or heart attack.  He also asked the

Waldo, Schweda & Montgomery, P.S.
2206 North Pines Road
Spokane, WA 99206
509/924-3686
Fax:  509/922-2196

Court to consider that his wife saved his life before by realizing that he was having a stroke and was able to obtain for him immediate medical assistance.  Another person would have not recognized the symptoms and the Defendant may have passed away from it.

Paragraph 297:  This paragraph states that the Defendant is "the second most culpable individual in the scheme."   The paragraph indicates the reason for this is that he managed the money aspect, setting up bank accounts and related issues and that he set up mail boxes and did some international traveling on behalf of the diploma mill.  However, the money was handled by Amy Hensley and Mr. Novak did more international traveling.  Setting up a bank account and setting up mail boxes should be looked at as a minor involvement in the scheme.  Therefore, the statement that the Defendant is the second most culpable should be stricken.

Paragraph 299:  This paragraph states that the Defendant will require "close supervision" during supervised release because he has demonstrated a willingness to operate outside the law and moral propriety in order to experience financial gain. The Defendant has been released during the 3 year pendency of this matter.  He has always been compliant in his release conditions.  There is no evidence whatsoever that he would need "close supervision."  And that reference should be stricken.

Further, the objections, as stated by Phillip Wetzel on behalf of Dixie Randock

Waldo, Schweda & Montgomery, P.S.
2206 North Pines Road
Spokane, WA 99206
509/924-3686
Fax:  509/922-2196

and by Richard Wall on behalf of Roberta Markishtum are incorporated herein by this

reference as if fully set forth.

RESPECTFULLY SUBMITTED this 5th day of June, 2008.

WALDO, SCHWEDA, & MONTGOMERY, P.S.

By:  /s/ PETER S. SCHWEDA
Peter S. Schweda, WSBA #7494
Attorney for Defendant Steven Karl Randock, Sr.

## _CERTIFICATE OF SERVICE_

I HEREBY CERTIFY that I electronically filed a true and correct copy of the foregoing Objections and Corrections to Presentence Report, by delivering same to each of the following attorneys of record, as follows:

**George JC Jacobs, III**usa-wae-gjacobs@usdoj.gov

By:  /s/ PETER S. SCHWEDA
Peter S. Schweda, WSBA #7494
Attorney for Defendant Steven Karl Randock, Sr

OBJECTIONS AND CORRECTIONS TO THE
PRESENTENCE REPORT - 19

Waldo, Schweda & Montgomery, P.S.
2206 North Pines Road
Spokane, WA 99206
509/924-3686
Fax:  509/922-2196